**James S. Davis,** OSB# 982070
P.O. BOX 7399
Salem, OR 97303
Telephone: (503)363-8661
Facsimile: (503)363-8681
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **MONICA GARCIA,** | ) Case No.CV'11-6407 HO |
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF PLAINTIFF |
| | ) RESPONSE TO DEFENDANT'S MOTION TO |
| v. | ) DISMISS AND MONTION TO STRIKE. |
| **WILLIAM AMES CURTRIGHT, AMES** | ) |
| **PROPERTIES LLC, AMES RESEARCH** | ) |
| **LABORATORIES,** | ) |
| Defendants. | ) |

## HISTORY

In 2005, William Curtright (Curtright), defendant, met Ms. Garcia, plaintiff, and her husband Trinidad Zavala when they worked for a restoration company cleaning up after fires, floods, or other events that required cleanup. Curtright had a fire at one of his properties and called the company Ms. Garcia worked for to do the cleanup. Curtright liked their work and contacted Ms. Garcia and Mr. Zavala about working for him directly.

In October of 2005, Curtright offered Ms. Garcia and her husband jobs working for Ames Research Labs. Ms. Garcia declined. However, Mr. Zavala met with Curtright to discuss working for him. When they met, Mr. Zavala informed Curtright that he was undocumented and asked if that would be a problem if he accepted the job. Curtright told him that if nobody inquired it would not be a problem for him. In March of

1- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

2006, when Curtright was running for Governor (Exhibit #1 Candidate Information sheet from Oregon Secretary of State) Curtright informed Mr. Zavala that his advisors informed him that his employment of undocumented workers could be a problem for his campaign and he terminated Mr. Zavala.

In September of 2006, Curtright tracked down Ms. Garcia and Mr. Zavala and convinced them to come to work for him. When Curtright approached Ms. Garcia and Mr. Zavala they told him their situation was the same and neither one of them was documented. He told them it was no longer a problem and offered them very good hourly wages. Ms. Garcia started working at Curtright's home and Mr. Zavala started working as a packer, shipper, and handyman at the factory. Curtright lives on a large estate with horses and stables and needed assistance maintaining this property. Curtright would also have Ms. Garcia and Mr. Zavala assist in maintaining his stables and horses. At this time, Curtright would pay Ms. Garcia under the table with cash and Mr. Zavala was on payroll at Ames Research Labs.

Shortly after working at Curtright's home, he asked Ms. Garcia if she would work for Ames Properties cleaning their properties. Ms. Garcia agreed and started working for Ames Properties cleaning rental units and offices. Curtright stopped paying her under the table and put her on payroll which included benefits. Ms. Garcia continued cleaning the Curtright home.

A few months later Curtright again met with Ms. Garcia and told her that he needed help with cleaning the Ames Research Lab's factory. Ms. Garcia agreed and started working a few days a week cleaning the

2- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

factory. Ms. Garcia worked cleaning the Home, Stables, properties, and factory from early 2007 until November 2011.

In July 2007, Curtright's mother's Alzheimer's started to progress and Curtright became her guardian and moved his mother into his home. After being in the Curtright home a few weeks, it became apparent that his mother could not care for herself. There were incidents of her wondering off, walking around without clothing, becoming violent, and being a threat to herself and others.

Curtright requested that Ms. Garcia "watch" his mother while she was doing her cleaning jobs. Ms. Garcia agreed and would bring Curtright's mother with her when she went to clean.

After having his mother in his home for a month or so, Curtright and his wife could not take having his mother living in their home with Alzheimer's, and moved her into a Residential independent living Facility in Albany Oregon. Curtright asked Ms. Garcia if she would go to Albany and assist his mother, bring her with Ms. Garcia when she would clean, then return her and help her with her meals. That would allow his mother to get out and not have to sit in the home alone all the time. Ms. Garcia agreed.

The force labor began when Curtright was told to move his mother out of the residential home to a more specialized location with 24 hour attendants. In the end of 2007 and early 2008, Curtright mother became unmanageable and started acting out in the Albany residential home. They requested her to leave the Albany home and she was moved to a home in Salem that provided both individual living and 24 hour monitoring or secured living. Curtright moved his mother into the individual living section and had Ms. Garcia continue assisting her,

3- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

the same as in the Albany home.  Ms. Garcia would pick her up and bring her with her to clean and return her to the residential home and assist her then go home to her family.  After a short time in Salem, it was clear that Curtright's mother needed 24 hour monitoring.  Due to the need of 24 hour monitoring, the residential home in Salem told Curtright either his mother would have to be moved to the monitored section of the residential home or removed from the home.  The cost of the monitored section would be a large increase in cost.

In April of 2008, when given the choice of removal or increase in cost of care, Curtright removed his mother from the facility. Curtright met with Ms. Garcia and requested that she provide the care for his mother.  He told her that his mother was terminally ill and was expected to live only 4 to 6 months.  Curtright offered to move Ms. Garcia and her family into a second home on his property and Ms. Garcia refused this offer.  Curtright convinced Ms. Garcia to allow his mother to come live at her home with her family on a temporary bases because Curtright's wife refused to allow her to live in the Curtright home.  Ms. Garcia continued to provide the cleaning services and other work as requested at the Curtright home, properties, and factory.

Once Curtright moved his mother into Ms. Garcia's home, he became demanding he would require Ms. Garcia to care for his mother 24 hours a day. Curtright also required her to clean his home, the factory, and his properties. When Ms. Garcia received her check after moving Curtright's mother into her home, she notice she was not paid for hours worked and she was not paid overtime. When she inquired she was told that she would no longer receive overtime.  When Ms. Garcia

4- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**
JAMES S DAVIS ATTORNEY AT LAW P.C
P.O. BOX 7399
SALEM, OR 97303
OFFICE (503)363-8661 FAX (503) 363-8681

protested Curtright started with the threats of deportation to her and her family.

Curtright required the service of not just Ms. Garcia but of her whole family. Curtright required Ms. Garcia to provide services to Ames Research Labs, Ames Properties, his home, mother and to take the mother with her when working at these locations. Curtright required her husband Trinidad to also provide care for his mother when he returned home from his job at Ames Research Labs. Because Ms. Garcia could not lift and move his mother, Curtright also required Ms. Garcia's oldest son to assist her in the care of his mother. Curtright demanded that they use the room of Ms. Garcia's youngest son for his mother and offered no compensation only threats of deportation. Every member of this family was affected.

In June of 2009, Ms. Garcia and her family planned to take their vacation and requested the time off. At that time, Ms. Garcia was informed that she no longer would receive vacation with pay as she had received prior. (Exhibit #2 letter from Curtright regarding vacation) Not only did she not receive vacation pay as she was paid in the prior year, Curtright told her that she and her family were required to take his mother with them on their vacations.

In a letter dated November 13, 2008, Curtright states his "guidelines" for the care of his mother. Part of the guidelines are that Ms. Garcia will be with "Mom all day and night," only allowing her time away when she is cleaning his home or on "Sunday during church." This letter was not just addressed to Ms. Garcia it was also addressed to her husband and required Mr. Zavala to care for his mother if for any reason Ms. Garcia had to leave. (Exhibit #3 letter

5- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

dated November 13, 2008) Ms. Garcia was not on salary she was an hourly worker and not paid for all the hours she worked. Mr. Zavala and Ms. Garcia's son were never paid a penny for the work Curtright demanded of them in the care for his mother. Ms. Garcia and her family may have started working under a labor agreement, however, after a short period of time they were forced to work at his home, properties and factory because of his threats to have them deported if they did not serve him and his family. This lasted for 44 months, not the 4 to 6 months originally stated by Curtright.

## STANDARD

The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 279 (6th Cir.1987). As the court stated in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Id.* at 47, 78 S.Ct. at 103; *Oil Chem. & Atomic Worker's Int'l Union, AFL-CIO v. Delta Ref. Co.,* 277 F.2d 694 (6th Cir.1960).

    **1. Plaintiff first claim for are based on the Fair Labor Standards Act**

The facts as alleged by Ms. Garcia must be taken as true. The

6- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

defendants argue that under the Fair Labor Standards Act minimum wage and overtime do not apply based on , 29 U.S.C. § 206 and 207. Ms. Garcia argues that the FLSA applies for the following reasons:

1. Force Labor is not Companionship services;
2. Ms. Garcia was an hourly based employee, with a set hourly wage rate, and this rate was not paid for the hours she worked for the defendants;
3. If Ms. Garcia did provide some companion services, over 20 percent of her time was performing other services and is not exempt for overtime. 29 CFR §552.6 states:

   As used in section 13(a)(15) of the Act, the term *companionship services* shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however,* That such work is incidental, *i.e.,* does not exceed 20 percent of the total weekly hours worked….

4. The FLSA in some cases does exempt certain employee from minimum wage and overtime requirements, however, the agreed upon hourly wage must be paid.
5. Ms. Garcia worked for Curtright personally, Ames Properties and Ames Research Labs all of the worked performed for these entities

7- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**
JAMES S DAVIS ATTORNEY AT LAW P.C
P.O. BOX 7399
SALEM, OR 97303
OFFICE (503)363-8661 FAX (503) 363-8681

and is covered by the FLSA and with this labor her hours exceeded the 20% threshold.

Ms. Garcia has alleged that she was hired in September of 2006, that she worked cleaning Curtright's home, properties, factory, and caring for his mother. That she agreed to work for Curtright in 2006 and starting from later 2007 or early 2008 to November, 2011, she was forced to work by use of threats of deportation of her and her family from Curtright. At no place in the complaint has plaintiff claimed that she stopped working at any location, only that Curtright force her to provide additional services to Curtright, his companies and his mother by use of threat by Curtright. She also alleges she was required to care for Curtright's mother 24 hours a day and was not paid for all hours worked. These are the facts as stated in the complaint and must be taken as true.

Defendants alleged that Ms. Garcia alleges "the only work she did, 24 hours a day since April 2008" was care for Curtright's mother. This was not stated in the complaint, defendants do not cite the complaint, and this appears to be created by the defendant.

In evaluating the allegations in the complaint under the FLSA all employees are required to be paid for their labor. However, companion workers do not have to be paid a minimum wage or overtime. Ms. Garcia originally provided some companion services in addition to working in the home, factory, and properties of Curtright. Until we partake in discovery, we cannot determine if the 20% threshold has been reached. However, when the nature of the labor was changed in later 2007 or early 2008 to force labor by threat of deportation, this was no longer voluntary labor, and Ms. Garcia would be entitled to overtime pay.

8- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

JAMES S DAVIS ATTORNEY AT LAW P.C
P.O. BOX 7399
SALEM, OR 97303
OFFICE (503)363-8661 FAX (503) 363-8681

Even if some labor was considered companion labor, Ms. Garcia has clearly stated that she was not paid for all the hours she worked. The issues of wage rate or overtime are not relevant to this point. The FLSA does not allow an employer to not pay a wage or force labor without pay. Defendant admits that Ms. Garcia was paid an hourly wage of $10.00 per hour and they paid her an average of 13 to 18 hours per day. (See defendants Memorandum, Background Facts, Pg. 1, Paragraph 1) Ms. Garcia says she had Curtright's mother in her care 24 hours a day and this is supported by the letter from Curtright dated November 13, 2008. This leaves from 8 to 11 hours of unpaid wages daily for 44 months. This does not include the hours worked at the home of Curtright, for Ames Properties, or Ames Research Lab. FLSA only exempts a person for receiving the minimum wage or overtime, it does not allow a person to not be paid for their labor.

Ms. Garcia has alleged that she works for Curtright, Ames Properties, and Ames Research Labs this must be taken as a fact. In fact, defendant confirms this in his memorandum. Ms. Garcia claims she was paid for some services and not others. This again appears to be confirmed by defendants own memorandum. They claim they only paid Ms. Garcia to care for Curtright's mother from 2008. This would mean the hours working clean Curtright's home, working cleaning properties for Ames Properties, and working cleaning Ames Research Lab's factory were hours of unpaid labor which fall under FLSA.

Based on the facts as stated and admissions made by the defendants, the FSLA claims cannot be dismissed against any defendant.

**2. Plaintiff has stated claims against Mr. Curtright and Ames Research Labs.**

9- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

Defendants claim that the statute of limitation has run on claims against Curtright and Ames Research Labs. Ms. Garcia has alleged that she was hired in September of 2006, that since 2006 she has worked cleaning Curtright's home, properties, factory, and caring for his mother. That she agreed to work for Curtright in 2006 and from late 2007 or early 2008 to November, 2011, she was forced to work by the use of threats from Curtright. At no place in the complaint has Ms. Garcia claimed that she stopped working at any location, only that Curtright force her to provide additional services to Curtright, his companies, and his mother by use of threat by Curtright. She also alleges she was required to care for Curtright's mother 24 hours a day and was not paid for the work she did. These are the facts as stated in the complaint and must be taken as true.

Again the defendant appears to be making up facts on their own. The bases of defendants' whole argument is page 8, paragraph 2 of their memorandum, the facts they argue are made up by the defendants. The facts as stated by defendants are not in the complaint and defendants do not cite the complaint. Ms. Garcia's complaint does not allege she stopped working for Curtright or his businesses. Therefore, this motion must be denied.

**3. Plaintiff's Third claim for relief contains factual assertions relating to race discrimination.**

Ms. Garcia concedes that no allegation in the complaint directly state she was Hispanic or Mexican. However, the allegations of paragraph 9, 12, 13, 14, 15, all support the fact that Curtright was aware of her race by the threats of deportation and other statements. A complaint should not be dismissed for failure to state a claim

10- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**
JAMES S DAVIS ATTORNEY AT LAW P.C
P.O. BOX 7399
SALEM, OR 97303
OFFICE (503)363-8661 FAX (503) 363-8681

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) Plaintiff requests the Courts permission to amend and add a statement as to the race of Ms. Garcia, with this amendment plus the allegations made in the complaint, when taken as true would sustain this claim.

4. **Plaintiff Second Claim for Relief clearly states a claim.**

Ms. Garcia has alleged that she was hired in September of 2006, since 2006 she has worked cleaning Curtright's home, properties, factory, and caring for his mother. That she agreed to work for Curtright in 2006 and from late 2007 or early 2008 to November, 2011, she was forced to work by the use of threats of deportation of her and her family from Curtright. These are the facts as stated in the complaint and must be taken as true.

Defendants again appear to make up facts and stories as they go along. Pages 11, 12 and 13, do not discuss the facts as alleged in the complaint, and cite the complaint only at one point. The defendants clearly distort the allegation of paragraph 4 they do cite. Ms. Garcia has not claimed to be a Permanent Resident (LPR), the complaint states "Monica Garcia, is a resident of Oregon." Defendant's statement that she claims to be a LPR is outright false. Moreover, the defendants have made many allegations, but have failed to provide anything such as an affidavit or sworn statement by anyone to support these allegations.

The one argument they did make was that the threats made by Mr. Curtright are not sufficient to be serious harm. This claim is not

11- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

supported by the Forced Labor Taskforce in almost all states and would be a question for the jury.

This claim must survive against all defendants, 18 U.S.C.§ 1589 states:
```
    Whoever knowingly provides or obtains the labor or services of a
person -
(1) by threats of serious harm to, or physical restraint
against, that person or another person;
(2) by means of any scheme, plan, or pattern intended to cause
the person to believe that, if the person did not perform such
labor or services, that person or another person would suffer
serious harm or physical restraint; or
(3) by means of the abuse or threatened abuse of law or the
legal process.
```

With the facts taken as true, Ms. Garcia has clearly made this claim. Moreover, 18 U.S.C. § 1590 and § 1595 provide a right to civil action against "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or service…. This allows the claims against Curtright, Ames Properties and Ames Research Labs because they all knowingly obtained labor and services by the threats made by Curtright who is president and sole owner of these companies.

## MOTION TO STRIKE

Ms. Garcia allegations in paragraphs 13 and 14 form the bases for her complaint. Ms. Garcia must show that the defendants had the knowledge of her status and how they obtained it. Ms. Garcia must also show that the threats were made and why her fears were valid. In defendants 4th motion to dismiss, they argue that Ms. Garcia's fears based on these facts are unreasonable. This shows defendants are aware that these allegations must be made and proven at trial in order for Ms. Garcia to prove her case.

12- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

Moreover, this motion should assist the court in viewing this whole matter and the veracity of the parties. Curtright has made two allegations, first that Ms. Garcia "inserted these statements prior to the filing of this lawsuit to coincide with her **Blackmail Style Demand Letter** for a large sum of money or else she would harm Mr. Curtright's political future." The letter the defendant described as "Blackmail Style Demand letter" is a letter that conforms to the requirements of filing a wage claim under ORS652.150. (Exhibit #4 ORS 652.150 Demand for Unpaid Wages) Defendant goes to represent to the Court that this letter states that Ms. Garcia threated to harm his "political future." These are just outright lies and demonstrate to the Court defendants' willingness to misstate the facts of this matter.

Second, the defendant attempt to mislead the Court by combining the statements made to Ms. Garcia or her husband in 2006 by implying that Curtright's campaign for Governor was not in 2006, but in 2010. Exhibit #1 the Candidate Information sheet from Oregon Secretary of State clearly shows that Curtright was running for Governor in 2006 as alleged by Ms. Garcia. Again the defendant's willingness to twist or distort facts is shown.

Because Ms. Garcia must prove the allegations in paragraph 13 and 14, and they form the bases of her claims, this motion must be denied.

### CONCLUSION

Based on the allegations made by Ms. Garcia taken as true, the defendants'motions, in total, must be denied.

DATED this 17th day of February, 2012.

13- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**

JAMES S DAVIS ATTORNEY AT LAW P.C
P.O. BOX 7399
SALEM, OR 97303
OFFICE (503)363-8661 FAX (503) 363-8681

s/ James S. Davis
                                    James S. Davis OSB#98207
                                    Attorneys for Plaintiff
                                    P.O. Box 7399
                                    Salem, Oregon 97303

14- **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE**



EXHIBIT 1

Home   Executive   Archives   Audits   Corporation   Elections

Elections Division
255 Capitol St NE, Ste 501, Salem, OR 97310
503.986.1518 or 1.866.673.VOTE

January 26, 2012 (Version: v3.6.0.1)

# Candidate Information

**Public Search**
- Committees by Name
- Committees by Election
- Committees by Measure/Petition
- Campaign Finance Transactions
- Campaign Finance Certificates
- Candidate Filings

My Vote

Elections Home
Elections History
Initiative, Referendum & Referral
Publications & Forms

## Candidate Information

| Field | Value | Field | Value |
|---|---|---|---|
| Candidate Name: | William Ames Curtright | Date Filed: | 03/08/2010 12:00:00 AM |
| Ballot Name: | William Ames Curtright | Qualified for Office: | Qualified |
| Filing Source: | Paper Filing | Filing Type: | Original |
| Office sought: | Governor | Filing Method: | Fee |
| Residence Address: | 135 Paradise Hill Drive SE, Turner, Oregon 97392, Marion County | Party: | Republican |
| | | Home Telephone: | (503)209-7388 |
| | | Work Telephone: | (503)588-3330 |
| Mailing Address: | PO Box 1350, Jefferson, Oregon 97352 | Fax: | (503)364-2380 |
| | | Email Address: | ames@amesfororegon.com |
| | | Web Site: | amesfororegon.com |

### Occupation Information

**Occupation (present employment - paid or unpaid)**

Owner/President/CEO of Ames Research Laboratories, Inc.

**Occupational Background (previous employment - paid or unpaid)**

1983 to 1998 - CEO/Owner of Manufacturing Company

### Education Information

**Educational Background (schools attended)**

| Complete name of School (no acronyms) | Last grade level completed | Diploma/Degree/Certificate | Course of Study |
|---|---|---|---|
| Rivier College | | Professional degree | PhD DBA Business Aministration |
| Western States Chiropractic | | | Medicine Graduate Work |
| Western Oregon University | | | Education Graduate Work |
| Northwest Christian University | | | Pastoral Counseling |
| George Fox University | | Bachelor's degree | Pre-med/Biology |

**Educational Background (other)**

US Navy - Vietnam Veteran

### Experience Information

**Prior Governmental Experience (elected or appointed)**

```
2002/2006 Ran for office Governor
2006/2008/2010 - Precinct Committeeperson, Turner, Oregon
2007/2008/2010 - Founder/Chairman of Gathering of the Eagles
2008 - Alternate Delegate for Republican National Convention
```

Back to Search Results

Printable Format

Copyright 2006-2011 Oregon Secretary of State. All Rights Reserved.

# AMES PROPERTIES LLC

## MEMO



June 11, 2009

Attn: Monica Garcia

Re: Sick/Vacation Pay

Ames Properties LLC does not have a sick plan. Also, Ames Properties LLC does not have a vacation plan – the vacation pay issued to you last year was part of a tentative agreement that included your caring for Elaine Thieman at the log house. This has not been the case.

*[signature]*

P.O. Box 1350
Jefferson, Oregon 97352
Phone: 503-209-7388

November 13, 2008

Dear Trinidad and Monica,

As per our recent conversation, you know I have some concerns regarding my Mother. I have left her there with you and Monica because she likes the animals and the family and she seems to enjoy being there. In regards to my recent visit, I feel I have a right to ask questions and inspect the place where my mother is staying, and make decisions based upon what I find. Because of this, I am resetting the guidelines for her care. Please realize that the State Retirement Homes would have been much more thorough and not as lenient as I have been. Please find the new guidelines with my suggestions below:

1. When Mom wants food, give it to her. She should not go hungry at all, and her doctor has given permission to feed her when she wants food. I suggest you buy at least two Hungry Man dinners per day and give them to her and cut the meals up so she can eat them.

2. We must change Mom's dressing every two-three days. The injury is a serious one.

3. I expect Monica to be with Mom all day and night. I have authorized an adult sitter to be with Mom only while Monica cleans the house and on Sundays during church.

4. If Monica does have to leave, Trinidad should always be there. She needs someone strong enough to prevent her from falling.



5. When there is an accident or an injury, a report must be written describing exactly what happened and I need to be notified *immediately*. You can usually reach me on my cell phone. Please remember that bruises suggest injuries and possible abuse. Hospital staff are always looking for abusive situations. So treat her well as I know you will.

6. Get the bathroom situation solved so that mom is safe when bathing. You can purchase a seat at a handicapped store for the shower. I visited a friend's care operation and saw this type of chair, and they make them for bathtubs as well. I recommend that you replace your shower door with a shower curtain and install safety handles. I will be glad to take care of the bill if this tub situation can be repaired.

7. These guidelines and suggestions are extremely important for my mother's safety and well-being. Please remember that I sign the checks, but you and Monica are strong-willed. Try to be thankful that I have given jobs to you. Therefore, please try your best to make this happen.

Sincerely,

Dr. W. Ames Curtright, PhD.
Owner, CEO
Ames Research Laboratories, Inc.

# JAMES S. DAVIS ATTORNEY AT LAW



PO BOX 7399

Salem, Oregon 97303

Telephone (503) 363-8661

Fax (503) 363-8681

Electronic mail: Jamesdee3080@msn.com

## ORS 652.150 DEMAND FOR UNPAID WAGES

12/07/2011

William A Curtright
Ames Properties LLC
Ames Research Laboratories
4135 Paradise Hill
Turner, OR 97392

RE: Monica Garcia Demand for Unpaid Wages under ORS 652.150

Dear Mr. Curtright,

My name is James S. Davis. I am an Attorney representing Ms. Monica Garcia in her DEMAND FOR UNPAID WAGES. This is a DEMAND LETTER pursuant to ORS 652.150 for the UNPAID WAGES of Ms. Monica Garcia. Ms. Monica Garcia has not been compensated for work performed for you in the amount of $174,035.00. This amount is calculated based on 24 hour a day service to your mother for over 3 years. This is a DEMAND for IMMEDIATE PAYMENT. I have attached the Federal Wage Complaint I will be filing if I am not contacted regarding payment by December 12, 2011. Please provide payment to the Law Offices of James S. Davis P.C. Post Office Box 7399 Salem, Oregon 97303, in the form of Cashier's Check or Money Order.

Sincerely,

James S. Davis