IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| MONICA GARCIA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:11-06407-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WILLIAM A. CURTRIGHT; AMES | ) | |
| PROPERTIES LLC; AMES RESEARCH | ) | |
| LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

On January 25, 2012, plaintiff Monica Garcia filed an
Amended Complaint against defendants William Curtright
(Curtright), Ames Properties LLC and Ames Research Laboratories
(ARL) alleging three claims: (1) violation of the Fair Labor
Standards Act (FLSA); (2) violation of the 18 U.S.C § 1589
prohibition of forced labor; and (3) violation of plaintiff's
equal rights guaranteed under 42 U.S.C. §1981.  [#11- pp.4-6].

1 - ORDER

Plaintiff seeks declaratory relief, an award of $174,035 in unpaid wages, an equal amount in liquidated damages and costs and fees. [#11-pp.5, 7].

Defendants move to dismiss all claims against them under Fed.R.Civ.P. 12(b)(1) and (6) and to strike paragraphs 13 and 14 of plaintiff's amended complaint as scandalous and immaterial to the claims presented in her suit. [#12].

## BACKGROUND

The parties agree that defendant William Curtright is the owner of Ames Properties LLC and ARL. [#11]. They also agree that plaintiff was hired by Mr. Curtright to clean his home, offices and properties on or about September 1, 2006. [#11-p.2,¶8]. It is unclear from the record which entity employed plaintiff at any given time or how long each entity employed plaintiff for her various jobs.

Plaintiff asserts that Mr. Curtright used his businesses to pay for the care of his mother as well as for cleaning his home and businesses. [#11-p.4,¶19]. Plaintiff contends that beginning in July, 2007, she drove to Albany to work from 9:00 am until 6:00 pm, six days each week to care for Mr. Curtright's ailing mother. [#11-p.3,¶¶10-11]. When paid for that work, plaintiff noticed that unlike the checks she received from Ames Properties and ARL, her first care-giving check did not contain any overtime pay. [#11-p.3,¶11].

2 - ORDER

Plaintiff asserts that, in April 2008, when Mr. Curtright's
mother's Alzheimer's disease progressed to a stage where she
required 24 hour care, that Mr. Curtright "forced" plaintiff and
her family to care for his mother 24 hours a day in plaintiff's
home.  [#11-p.3,¶15].  When plaintiff complained to Mr. Curtright
that she was paid less than $5 per hour for this work, plaintiff
alleges he responded that he was politically connected, had been
a candidate for governor and had government friends who would
deport plaintiff and her family if she continued to complain.
[#11-p.3,¶¶12-13, 18].  Plaintiff argues that the hours during
which she cleaned Mr. Curtright's house, and properties for Ames
Properties and ARL, are hours outside those she spent caring for
Mr. Curtright's mother, and therefore fall under FSLA.  [#15-
p.9].

Defendants allege that plaintiff was terminated from their
employ on or about November 23, 2011, as a result of Mr.
Curtright discovering evidence that his mother had been
physically abused by plaintiff or one of her family members.
[#13-p.2].

Defendants argue that plaintiff's claims should be dismissed
because: FLSA does not apply to exempt caregiver/companionship
services such as those plaintiff performed; plaintiff's FLSA,
Oregon civil rights claims and 42 U.S.C §1981 claims,
particularly those against Ames Research and ARL, are outside the

3 - ORDER

applicable statute of limitations; her second claim of forced
labor is simply not plausible and her complaint does not contain
any factual assertions to support a claim based on race
discrimination.  [#13-pp.6-14].

## DISCUSSION

### 1.   Fed,R.Civ.P. 8 and 12 Standards:

#### a)   Fed.R.Civ.P. 8:

Claims for relief must contain a "short and plain
statement of the claim showing the pleader is entitled to
relief."   Fed.R.Civ.P. 8(a)(2).   Furthermore, "each allegation
must be simple, concise and direct" showing the pleader is
entitled to relief.  Fed.R.Civ.P. 8(d)(1); *Ashcroft v. Iqbal,* 129
S.Ct 1937, 1949 (2009).  Under notice pleading in federal court,
the complaint must "give the defendant fair notice of what the
claim is and the grounds upon which it rests." *Bell Atlantic v.*
*Twombly,* 550 U.S. 544, 555 (2007)(internal quotations omitted).

#### b)   Fed.R.Civ.P. 12(b)(6):

Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate
where the complaint lacks sufficient facts to support a
cognizable legal theory.  *Balistreri v. Pacifica Police Dep't,*
901 F.2d 696, 699 (9th Cir 1988).  To sufficiently state a claim
for relief and survive a Fed.R.Civ.P. 12(b)(6) motion, the
pleading does not need detailed factual allegations but the
factual allegations must be enough to raise a right to relief

4 - ORDER

above the speculative level. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)(mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do).

There must be sufficient facts to state a claim for relief that is plausible on its face. *Id.* at 570. In other words, for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir 2009)

Plaintiff incorrectly argues that the court must construe all her allegations as true when assessing defendants' motion to dismiss. [#15-p.6]. While the plausibility standard is not akin to a "probability requirement," it *does* ask for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Thus, where a complaint simply pleads facts that lack the "heft to show the pleader is entitled to relief", it stops short of the line between possibility and plausibility or entitlement to relief. *Id.* at 557. In other words, a plaintiff's threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient to open the doors of discovery. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).

## 2. First Claim: Fair Labor Standards Act (FLSA) violation:

Plaintiff alleges that under FLSA, defendants were required to pay her federal minimum wage as well as time and a half for any time worked over 40 hours per week. [#11-p.4,¶¶ 22-26]. She alleges she is therefore owed a total $348,070.00 in unpaid wages and liquidated damages. [#11-p.4,¶ 25].

However, FLSA minimum wage and overtime provisions do not apply to:

"any employee ... employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves."

29 U.S.C. § 213(a)(15). "Companionship services" for the aged or infirm are defined as:

"those services which provide fellowship, care and protection for a person who because of advanced age or physical or mental infirmity cannot care for his or her own needs."

29 C.F.R. §552.6. This is precisely the service that plaintiff supplied when providing care for Mr. Curtright's ailing mother.

Plaintiff argues without any supporting authority, that because she was working under the threat of deportation, her forced labor cannot qualify as companionship services. [#15-pp.6-9]. She further argues that even if it did, over 20% of her time was spent performing other services for defendants and not for companionship services. *Id.* Plaintiff contends that only through discovery can she "determine if the 20% threshold has

6 - ORDER

been reached." [#15-p.8].

Plaintiff's argument that she must commence discovery to
determine the amount of time she spent performing "other
services" (so she can determine whether she reached the 20%
companionship service threshold), is not well taken. Given that
plaintiff alleges she was caring for an elderly person in her own
home 24 hours a day, it is hard to understand who, other than
plaintiff, could ascertain the percentage of total work time
plaintiff spent performing services other than care-giving. This
theory - that plaintiff provided companionship services for less
than 80% of her total working time - is neither mentioned in
plaintiff's amended complaint nor plausible given the allegations
that *are* contained in her complaint.

While FLSA may be used to calculate any damages that might
be appropriate under the forced labor provisions of the
Trafficking Victims Protection Act (TVPA), as an exempt provider
of companionship services, plaintiff's first claim for relief
under FLSA fails[1]. 29 U.S.C. 213(a)(15).

_____

[1] Defendants correctly note that the statute of limitations
on a FLSA claim is two years after the cause of action accrued
unless there is a willful violation (which is not pleaded here).
29 U.S.C. §255(a). However, given the agreed fact that plaintiff
continued her employ with at least some of the defendants until
November 23, 2011, this action was timely filed on December 13,
2011.

### 3. Second Claim: violation of 18 U.S.C. §1589:

Plaintiff alleges that defendants, by use of threats of harm and abuse of law, forced plaintiff to care for Mr. Curtright's mother. [#11-pp.4-5,¶¶ 15-16; 27-31]. Specifically plaintiff asserts that in April 2008, as his mother's condition deteriorated, Mr. Curtright forced plaintiff to accept his mother into plaintiff's home by threatening plaintiff and her family with deportation. *Id.* Plaintiff alleges, that moving Mr. Curtright's mother into plaintiff's home meant that plaintiff's children had to move from their bedroom onto the floor. *Id.* Plaintiff further alleges that she was forced to care for Mr. Curtright's mother without respite, 24 hours each day, either without pay or, for pay below the minimum wage. *Id.*

Under international law, as explained in the Traffic Victims Protection Act[2] (TVPA), "forced labor" occurs when a defendant obtains the labor or services of a person: (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse of threatened abuse of law or the legal process. 18

---

[2] The TVPA contains a ten-year statute of limitations. (Papa v. U.S., 281 F.3d 1004, 1012-13 (9th Cir.2002)).

U.S.C. §1589.

An individual is guilty of forced labor if he intends to
cause a person in his employ to believe that if she does not
continue to work, she will suffer the type of serious harm —
physical or nonphysical, including psychological, financial,
reputation harm — that would compel someone in her circumstances
to continue working to avoid that harm.  *U.S. v. Dann,* 652 F.3d
1160, 1170 (9th Cir. 2011).

However, not all bad employer-employee relationships
constitute forced labor.  First, the threat of harm must be
considered from the vantage point of a reasonable person in the
place of the victim, and must be "sufficiently serious" to compel
that person to remain with the employer.  18 U.S.C §1589(c)(2).
Second, the scope of the statute is further narrowed by the
requirement of *scienter.  Dann* 652 F.3d at 1170(citing *U.S. v.
Calimlim,* 538 F.3d 706, 711-12 (7th Cir. 2008)).  The employer
must intend to cause the victim to believe that she would suffer
serious harm if she did not continue to work.  In other words,
under section 1589, the employer must not just threaten serious
harm but have intended the victim to believe that such harm would
befall her.  *Id.*

Plaintiff alleges that defendants hired her in September
2006, to clean Mr. Curtright's home, offices and properties.
[#11-p.2,¶¶ 8-9].  She further alleges that from July 2007, she
was forced to work for substandard wages because defendant
9 - ORDER

Curtright threatened her and her family with deportation[3].   [#11-
p.3,¶13; #15-pp.11-12].   Plaintiff admits she lived at and later
worked from, her family home and had the means to drive to Albany
six days each week to care for Curtright's mother prior to having
her move in with them.   [#11-pp.2-3, ¶¶9-15].

Plaintiff's immigration status is not apparent from the face
of plaintiff's amended complaint.   However, the alleged
threatened deportation of plaintiff and her family would on the
face of the complaint, constitute sufficiently serious threatened
harm to preclude dismissal of her second claim at this stage of
litigation.

**4.   Third Claim for Relief: Violation of 42 U.S.C. §1981:**

Plaintiff broadly alleges that defendants discriminated
against her on the basis of her race, national origin and
ethnicity.   [#11-p.6,¶34].   However plaintiff alleges only that
she is a resident of Oregon and concedes in her response, that

---

[3]      The court notes that defendants attached copies of
plaintiff's Oregon driver's license, social security card, GED
certificate and employment eligibility verification I-9 document to
their reply brief as "proof" of plaintiff's legal immigration
status.   [#17-1, p.7].   While these documents may well be suitable
for a motion for summary judgment, they do not fall into the narrow
exceptions for consideration in a motion to dismiss.   *Parrino v.*
*FHP, Inc.*,  146 F.3d 699, 705-06 (9th Cir. 1998).   The court
additionally notes that even if the court were to consider them,
none of the first three indicate plaintiff's citizenship or
immigration status and noticeably absent from the I-9 document is
any indication of plaintiff's immigration status - none of the
applicable boxes are checked off.   [#17-pp.5-8]   By contrast,
plaintiff's husband's I-9 form (a copy of which is also attached),
has a check mark in the box indicating that he is a citizen of the
United States. [#17-1- p.13].

10 - ORDER

she makes no allegations with regard to her race, ethnicity or national origin. [#15-p.10]. She circularly argues that her allegations of being threatened with deportation, mean that defendants made those threats because of her race, ethnicity or national origin and requests the court's permission to amend her complaint to include a statement of race to enable her to withstand dismissal. [#15-pp.10-11].

However, even with a statement of national origin, ethnicity or race, plaintiff alleges no specific factual allegations to support this claim. Her complaint contains only bare legal theories and conclusions which are simply not enough to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009),("[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

## CONCLUSION

Based on the foregoing reasoning, defendants' Motion to Dismiss [#12] is GRANTED as to plaintiff's First and Third claims and DENIED for plaintiff's Second claim.

IT IS SO ORDERED.

DATED this _____ day of May, 2012.

United States District Judge

11 - ORDER